Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| PEDRO SALVADOR RIVERA ROSADO<br><br>Parte Apelante<br><br>v.<br><br>GRENSHEN MARIE TORRES MORALES<br><br>Parte Apelada | TA2026AP00511 | *APELACIÓN*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso núm.:<br>AR2025RF00372<br><br>Sobre:<br>Custodia – Relaciones Paterno / Materno Filiales |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2026.

El 18 de mayo de 2026, el señor Pedro Salvador Rivera Rosado (el señor Rivera Rosado o el apelante) presentó ante nos una *Apelación* en la que solicitó que revoquemos la *Sentencia* emitida el 19 de febrero de 2026, notificada el 20 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI o foro primario).[1]

En el aludido dictamen, el foro primario acogió el informe de un trabajador social y le adjudicó la custodia del menor T.S.R.T. a la señora Grenshen Marie Torres Morales (la señora Torres Morales o la apelada).

Por los fundamentos que expondremos a continuación, modificamos la *Sentencia* apelada, y así modificada, confirmamos.

**I.**

El caso de autos tuvo su origen cuando el 29 de abril de 2025, el apelante instó una *Demanda* en la que solicitó que el TPI establecieran las relaciones paternofiliales con el menor T.S.R.T.[2]

---

[1] Entrada núm. 66 del caso núm. AR2025RF0032 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).
[2] Entrada núm. 1 del caso núm. AR2025RF0032 en el SUMAC.

Tiempo después, el 23 de septiembre de 2025, el señor Rivera Rosado radicó una *Demanda Enmendada* en la que solicitó la custodia compartida del menor T.S.R.T debido a que estaba económica y emocionalmente estable y tenía apoyo familiar.[3] Alegó que, no había logrado un acuerdo con la apelada sobre la custodia del menor. Por tanto, requirió que el foro primario declarase Ha Lugar la *Demanda Enmendada.*

En respuesta, el 17 de octubre de 2025, la señora Torres Morales presentó una *Contestación a demanda enmendada* en la que ripostó que, el apelante rogó tener custodia compartida sobre el menor T.S.R.T. por razones económicas dado que esta solicitó una pensión alimentaria para cubrir los gastos del menor.[4] En esa línea, adujo que, el señor Rivera Rosado era una persona que no tenía la capacidad ni el compromiso para atender los asuntos del menor. Por ende, reiteró que, se le concediera la custodia monoparental y se fijaran las relaciones paternofiliales en armonía con el mejor bienestar del menor.

Así las cosas, el 24 de octubre de 2024, el foro primario emitió una *Orden a la unidad social,* notificada el 27 de octubre de 2024, en la que ordenó a la Unidad Social de Relaciones de Familia y Asuntos de Menores del TPI para que realizara dentro del término de noventa (90) días un estudio social.[5]

En cumplimiento con la referida orden, el 23 de enero de 2026, la Unidad Social de Relaciones de Familia y Asuntos de Menores radicó una *Moción de informe social* en la que recomendó que se le concediera la custodia del menor T.S.R.T. a la señora Torres Morales.[6] A su vez, surgió del informe que, el trabajador social que investigó a las partes determinó que, el apelante no estaba

---

[3] Entrada núm. 22 del caso núm. AR2025RF0032 en el SUMAC.
[4] Entrada núm. 35 del caso núm. AR2025RF0032 en el SUMAC.
[5] Entrada núm. 39 del caso núm. AR2025RF0032 en el SUMAC.
[6] Entrada núm. 56 del caso núm. AR2025RF0032 en el SUMAC.

apto para asumir las responsabilidades de la custodia compartida y, por tanto, le asistía la razón a la señora Torres Morales. También, el apelante no tenía una participación activa en las actividades educativas y económicas del menor. Encima, el señor Rivera Rosado no tenía licencia de conducir tras tener varias multas administrativas sin pagar. Además, el apelante admitió que consumía cannabis sin la debida licencia. Ante este cuadro, el trabajador social concluyó que las relaciones paternofiliales debían ser supervisadas y en fines de semanas alternos hasta tanto el señor Rivera Rosado obtuviera una licencia de conducir y licencia de uso de cannabis medicinal puesto que admitió el uso de la sustancia sin la debida licencia. Ante ello, esbozó que, el menor debía ser recogido frente al Cuartel de la Policía en Ciales, los viernes a las 6:30 p.m. y la entrega del menor a la apelada debía ser los domingos a las 6:00 p.m. en el mencionado cuartel en compañía de un adulto con licencia de conducir vigente.

El 26 de enero de 2026, el *foro a quo* remitió una *Orden*, notificada el 27 de enero de 2026, en la que ordenó que las partes tuvieran acceso al informe social radicado el 24 de octubre de 2025 por la Unidad Social de Relaciones de Familia y Asuntos de Menores.[7] El TPI indicó las debidas instrucciones y le concedió a las partes el término de quince (15) días para mostrar causa por la cual no se deberían acoger las recomendaciones del informe social.

En atención a la *Orden*, el 13 de febrero de 2026, la señora Torres Morales instó un *Escrito para fijar posición a informe social forense* en la que alegó que no tenía reparo en que el foro primario acogiera las recomendaciones del informe social.[8] Por otra parte, inquirió que, el TPI ordenara que las partes mantuvieran un "canal de comunicación" mediante la aplicación de *Whatsapp* para los

---

[7] Entrada núm. 58 del caso núm. AR2025RF0032 en el SUMAC.
[8] Entrada núm. 62 del caso núm. AR2025RF0032 en el SUMAC.

asuntos relacionados al menor. Igualmente, que cuando el menor pernocte con el padre debía comunicarse una vez al día con esta y que las relaciones paternofiliales sean supervisadas.

Decursado el término concedido por el TPI para que las partes presentaran su postura con respecto al informe social, el 19 de febrero de 2026, el foro primario emitió una *Orden* en la que informó que tomó conocimiento sobre la anuencia de la señora Torres Morales sobre las recomendaciones del *Informe Social*.[9]

En igual fecha, el *foro a quo* emitió una *Sentencia*, notificada el 20 de febrero de 2026, tras la apelante fijar su postura con respecto al *Informe Social* y sin la comparecencia del señor Rivera Rosado con relación al referido informe, en la que acogió el informe social redactado por un trabajador social de la Unidad Social de Relaciones de Familia y Asuntos de Menores del TPI.[10] En esa línea, determinó que, la apelada debía mantener la custodia del menor T.S.R.T. Resolvió que, las relaciones paternofiliales debían ser supervisadas y en fines de semanas alternos hasta tanto el señor Rivera Rosado no tuviera una licencia de cannabis medicinal y licencia de conducir. Apuntó que, el recogido y la entrega del menor sería conforme lo recomendó el trabajador social en el *Informe Social*. El TPI señaló que, la madre podía comunicarse con el menor al menos una (1) vez al día mientras pernoctaba con el apelante y las partes debían comunicarse para atender los asuntos relacionados al menor a través de la aplicación de *Whatsapp*.

Insatisfecho, el 9 de marzo de 2026, el apelante instó una *Moción solicitando reconsideración* en la que sostuvo que, tenía licencia de conducir y de cannabis medicinal por lo que las visitas no debían ser supervisadas.[11] Arguyó que, el recogido y entrega del menor no debería ser en el Cuartel de la Policía toda vez que, no es

---

[9] Entrada núm. 65 del caso núm. AR2025RF0032 en el SUMAC.
[10] Entrada núm. 66 del caso núm. AR2025RF0032 en el SUMAC.
[11] Entrada núm. 80 del caso núm. AR2025RF0032 en el SUMAC.

el ambiente apropiado para exponer al menor. Adujo que, contrario al informe, este participaba activamente en las actividades escolares del menor. Consecuentemente, le rogó al TPI que reconsiderara el dictamen emitido puesto que ostenta las licencias que carecía. Encima, suplicó la celebración de una vista evidenciaría en la que se dilucidara los asuntos de custodia u ordenara al trabajador social que reevaluara el caso.

El 12 de marzo de 2026, el TPI emitió una *Resolución No Ha Lugar Reconsideración* en la que declaró No Ha Lugar la *Moción solicitando reconsideración.*[12]

Nuevamente, el 13 de marzo de 2026, el señor Rivera Rosado radicó una *Moción aclaratoria y suplementaria* en la que argumentó que, el día en que fue emitida la *Sentencia*, era el día en que culminaba el término concedido por el foro primario para exponer su postura sobre el *Informe Social.*[13] Así pues, alegó que, el único remedio que tenía para fijar su postura acerca del referido *Informe* era mediante la *Moción solicitando reconsideración* interpuesta por este. Por tanto, solicitó que el foro primario reconsiderase la *Sentencia* emitida a la luz de los fundamentos esgrimidos en la *Moción solicitando reconsideración.*

El 17 de marzo de 2026, el TPI emitió una *Resolución Interlocutoria*, notificada el 18 de marzo de 2026, en la que dejó sin efecto la *Resolución* emitida el 11 de marzo de 2026 y le concedió a la señora Torres Morales un término de veinte (20) días para radicar su postura en cuanto al petitorio del apelante.[14]

En cumplimiento con la *Resolución*, el 1 de abril de 2026, la apelada instó una *Moción en cumplimiento de orden y en oposición* en la que ripostó que, el apelante incumplió en impugnar el *Informe*

---

[12] Entrada núm. 82 del caso núm. AR2025RF0032 en el SUMAC.
[13] Entrada núm. 83 del caso núm. AR2025RF0032 en el SUMAC.
[14] Entrada núm. 84 del caso núm. AR2025RF0032 en el SUMAC.

*Social* dentro del término concedido.[15] En otros términos, indicó que, el Informe Social estaba fundamentado en el mejor interés del menor por lo que no debe alterarse la determinación del *foro a quo*. Por ende, solicitó que el TPI declarase No Ha Lugar la reconsideración interpuesta por el apelante.

Evaluada ambas posturas, el 15 de abril de 2026, notificada el 16 de abril de 2026, el foro primario emitió una *Resolución* en la que, decretó que la *Sentencia* emitida, en la que acogió el *Informe Social*, fue veinte tres (23) días después del término concedido para impugnar el *Informe Social*.[16] Con ello, nuevamente, declaró No Ha Lugar la *Moción solicitando reconsideración*.

Inconforme, el 18 de mayo de 2026, el señor Rivera Rosado compareció ante nos a través de una *Apelación* en la que coligó el siguiente error:

> Erró el Tribunal de Primera Instancia al emitir un dictamen irrazonable en una controversia relacionada con la solicitud de custodia compartida de un menor de edad, en contravención a los principios doctrinales establecidos en *Maldonado v. Secretario de Recursos Naturales*, 113 DPR 494 (1982), *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645 (2016), así como al principio del mejor interés del menor y a la política pública que rige este tipo de procedimiento en nuestra jurisdicción.

En cumplimiento con nuestra *Resolución*, la señora Torres Morales instó un *Alegato en oposición a recurso de apelación*.

Con el beneficio de la comparecencia de las partes, procederemos a resolver.

**II.**

La patria potestad se define como el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación. Art. 589 del Código Civil, 31 LPRA sec. 7241. A su vez, la custodia constituye una manifestación de la patria potestad, en tanto impone a los padres el

---

[15] Entrada núm. 84 del caso núm. AR2025RF0032 en el SUMAC.
[16] Entrada núm. 86 del caso núm. AR2025RF0032 en el SUMAC.

deber primario de mantener a sus hijos no emancipados bajo su cuidado y compañía. *Jusino González v. Norat Santiago*, 211 DPR 855, 863 (2023); *Torres, Ex parte*, 118 DPR 469, 476 (1987). En ese sentido, la custodia se refiere a la tenencia o control físico que ejerce un progenitor sobre sus hijos. *Torres, Ex parte, supra*, pág. 477.

En particular, la custodia compartida es la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable. Art. 602 del Código Civil, 31 LPRA sec. 7281; Art. 3 de la Ley Núm. 223-2011, 32 LPRA sec. 3181. De otra parte, la custodia exclusiva se refiere a cuando esta se asigna a un solo progenitor. *Jusino González v. Norat Santiago, supra*, pág. 864. A tales efectos, el Código Civil dispone que la custodia del hijo, acompañada o no del ejercicio exclusivo de la patria potestad, puede asignarse a un solo progenitor: (a) mientras se ventila el proceso de divorcio o de nulidad del matrimonio; (b) luego de decretada la disolución o anulado el matrimonio; o (c) cuando hay diferencias irreconciliables o reiteradas entre los progenitores que afectan significativamente la crianza razonada, responsable y efectiva del hijo. Art. 606 del Código Civil, 31 LPRA sec. 7281. En estos supuestos, no puede impedirse ni entorpecerse el contacto del otro progenitor con su hijo, aunque sí puede regularse conforme a lo dispuesto en el Código. *Íd.*

Al adjudicar la custodia, los tribunales deben utilizar como criterio rector el bienestar y los mejores intereses del menor. *Jusino González v. Norat Santiago, supra*; *Muñoz Sánchez v. Báez De Jesús*, 195 DPR 645, 651 (2016). Esto implica que la decisión judicial sobre custodia debe alcanzarse tras un análisis objetivo, ponderado y cuidadoso de todas las circunstancias del caso, teniendo como norte

principal el bienestar del menor. *Jusino González v. Norat Santiago, supra*; *Ortiz v. Meléndez,* 164 DPR 16, 26-27 (2005).

El Tribunal Supremo de Puerto Rico ha reconocido que, en virtud de las prerrogativas que emanan del poder de *parens patriae* del Estado, los tribunales poseen amplias facultades para adoptar las medidas que estimen necesarias al adjudicar la custodia de un menor. *Jusino González v. Norat Santiago, supra*, pág. 865. De igual forma, los tribunales deben guiarse principalmente por el bienestar y los mejores intereses del menor ya que éstos constituyen la base de la política pública en esta materia. *Pena v. Pena,* 164 DPR 949, 958-959 (2005); *Marrero Reyes v. García Ramírez,* 105 DPR 90, 104 (1976).

La Ley Núm. 223-2011, según enmendada, conocida como la *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia* (en adelante, Ley Núm. 223-2011), 32 LPRA secs. 3181 *et seq.*, persigue, entre otros objetivos, fomentar un mayor grado de participación y presencia de ambos progenitores en la vida de los menores que son producto de parejas divorciadas o separadas, con el fin de propiciar una mejor calidad de vida. Exposición de Motivos de la Ley Núm. 223-2011. En consonancia con ello, dicha ley establece como política pública la promoción de la custodia y patria potestad compartida, para facilitar la continuidad y el fortalecimiento de los vínculos afectivos propios de una relación materno o paterno filial adecuada. *Torres, Ex parte, supra*, págs. 505-506.

Asimismo, en cuanto a los criterios que deben considerarse en toda determinación de custodia, el Artículo 7 de la Ley Núm. 223-2011, 32 LPRA sec. 3185, dispone que "al considerarse una solicitud de custodia en la que surjan controversias entre los progenitores en cuanto a la misma, el tribunal referirá el caso al trabajador social de Relaciones de Familia, quien realizará una evaluación y rendirá

un informe con recomendaciones al tribunal." De esta manera, los foros judiciales cuentan con el apoyo de la Unidad Social de Relaciones de Familia y Asuntos de Menores, cuya función principal es ofrecer asesoramiento social mediante evaluaciones periciales que permitan al tribunal tomar decisiones informadas en los casos ante su consideración. *Jusino González v. Norat Santiago, supra,* pág. 865; *Muñoz Sánchez v. Báez de Jesús, supra,* pág. 652.

Añade el referido artículo que tanto el trabajador social, al efectuar su evaluación, como el tribunal, al emitir su determinación, deberán considerar varios criterios, tales como:

> 1) La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.
>
> 2) El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.
>
> 3) La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.
>
> 4) El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.
>
> 5) Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.
>
> 6) La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.
>
> 7) Que la decisión no sea producto de la irreflexión o coacción.
>
> 8) Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.
>
> 9) Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.
>
> 10) Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.
>
> 11) Si la ubicación y distancia de ambos hogares perjudica la educación del menor.
>
> 12) La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.
>
> (13) Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. [...]
>
> (13) [sic] Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor. Art. 7 de la Ley Núm. 223-2011, 32 LPRA sec. 3185.

De igual modo, el Artículo 604 del Código Civil, 31 LPRA sec. 7283, recoge criterios sustancialmente similares a los establecidos en el precitado Artículo 7 de la Ley Núm. 223-2011, *supra*.

Por otro lado, los profesionales que asisten al tribunal en la formulación de recomendaciones periciales para adjudicar la custodia se rigen por las *Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores*. Ello responde a la necesidad de que el foro judicial cuente con la información más amplia y completa posible para resolver conforme al mejor bienestar del menor. *Jusino González v. Norat Santiago, supra*, págs. 865-866.

Así, cuando existe una controversia entre los progenitores en relación con las relaciones filiales de un menor, el tribunal referirá el caso a un trabajador social para que realice la evaluación correspondiente y rinda un informe con recomendaciones. Véanse, Normas VII y VIII en las *Normas y Procedimiento de las Unidades de Relaciones de Familia y Asuntos de Menores*. Como resultado de dicho proceso, el trabajador social emitirá un Informe Social Forense, definido como el producto final de la evaluación en el que se atiende la controversia referida por el Tribunal, se ofrecen recomendaciones sobre la controversia y se destacan todas las áreas evaluadas, la fuente de datos, e integra el conocimiento teórico o razonamiento que fundamenta las recomendaciones. Norma VI (Z) en las *Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores*.

En lo relativo a las recomendaciones del trabajador social sobre las relaciones filiales, este identificará los factores que inciden en el plan y sugerirá la asistencia que requiera la familia para superar sus limitaciones. Véase, Norma VII (P) en las *Normas y Procedimiento de las Unidades de Relaciones de familia y Asuntos de Menores*.

A su vez, el Artículo 8 de la Ley núm. 223-2011, 32 LPRA sec. 3186, establece que tanto las recomendaciones del trabajador social como la determinación judicial sobre custodia deben estar dirigidas a garantizar el mejor bienestar del menor. No obstante, dichas recomendaciones constituyen solo uno de los factores que el tribunal debe considerar al emitir su determinación, la cual deberá adoptarse a la luz de todas las circunstancias del caso y en estricto cumplimiento con la política pública de protección al menor. *Íd.*

La determinación de cuáles son los mejores intereses del menor está enmarcada en el derecho que este tiene a una correcta formación física, moral y espiritual. *Ortiz v. Meléndez, supra*, pág. 27; *Nudelman v. Ferrer Bolívar*, 107 DPR 495, 509 (1978). Para ello, resulta necesario evaluar factores tales como: la preferencia del menor, su sexo, edad y salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes. *Muñoz Sánchez v. Báez de Jesús, supra*, pág. 651; *Ortíz v. Meléndez, supra*, pág. 27; *Marrero Reyes v. García Ramírez, supra*, pág. 105.

**III.**

En el caso de autos, el apelante argumentó que, el TPI erró al emitir un dictamen contrario a los requisitos jurisprudenciales emitidos en *Maldonado v. Secretario de Recursos Naturales*, 113 DPR 494 (1982) y *Muñoz Sánchez v. Báez De Jesús*, 195 DPR 645 (2016). Veamos.

A tenor con el marco jurídico expuesto, la custodia es el deber que ostentan los padres de mantener a los hijos bajo su cuidado. Es decir, se refiere al control físico que ejercen los progenitores sobre

sus hijos. Ahora bien, la custodia compartida es cuando ambos padres tienen el deber de atender a sus hijos con las funciones que conlleva la patria potestad. Art. 602 del Código Civil, 31 LPRA sec. 7281; Art. 3 de la Ley Núm. 223-2011, 32 LPRA sec. 3181. Por otra parte, la custodia exclusiva surge cuando se le asigna a un solo progenitor atender los deberes del menor previamente contemplados. A esos fines, se le asigna la custodia exclusiva a un progenitor cuando: a) se ventila el proceso de divorcio o de nulidad del matrimonio; (b) luego de decretada la disolución o anulado el matrimonio; o (c) cuando hay diferencias irreconciliables o reiteradas entre los progenitores que afectan significativamente la crianza razonada, responsable y efectiva del hijo. Art. 606 del Código Civil, *supra* sec. 7281. Empero, cuando el Tribunal va a adjudicar la custodia, debe tener como principio rector el bienestar y los intereses del menor. *Muñoz Sánchez v. Báez De Jesús*, *supra*, pág. 651. Igualmente, el Art. 7 de la Ley Núm. 223-2011, *supra* sec. 3185, delinea varios factores que el Tribunal debe considerar cuando va a adjudicar la custodia de un menor. Particularmente, el Tribunal Supremo ha distinguido los siguientes factores para adjudicar la custodia como lo es: la preferencia del menor, su sexo, edad y salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes. *Muñoz Sánchez v. Báez De Jesús*, *supra*, pág. 651; *Ortíz v. Meléndez*, *supra*, pág. 27. Cónsono con lo anterior, tanto nuestra jurisprudencia como el citado estatuto, ha reconocido la asistencia de la Unidad Social de Relaciones de Familia y Asuntos de Menores para evaluar el entorno del menor en aras de que el Tribunal

pueda minuciosamente determinar a qué progenitor debe ser adjudicada la custodia. Así pues, las recomendaciones de un trabajador social están enmarcadas en el mejor bienestar del menor.

Luego de un examen detallado de la totalidad del expediente ante nos y tomando en consideración el mejor bienestar del menor, tenemos el deber ineludible de confirmar el dictamen apelado. Sin embargo, hacemos la salvedad de que acogeremos la *Sentencia* apelada, como un dictamen provisional y no final y firme, dado que las condiciones del menor y el apelante pueden cambiar.

Se desprende del expediente ante nos que, cuando el trabajador social evaluó el entorno del menor, el apelante admitió no tener licencia de conducir tras incumplir en pagar varios boletos de tránsito e ingerir cannabis sin la debida licencia. Igualmente, el señor Rivera Rosado no ha manifestado tener interés en involucrarse en asuntos académicos, médicos y extracurriculares en la vida del menor. También, surgieron diversas incongruencias con respecto a cuando el menor estaba en compañía del padre, toda vez que, en ocasiones cuando el menor pernoctaba con el apelante este no está presente. Asimismo, resulta que, la apelada es quién se encarga de todos los asuntos relacionados al menor y tiene un rol activo en la vida del menor. No resulta forzoso concluir que, contrario a lo alegado por el apelante, su pobre participación, falta de esmero en querer ser partícipe de la vida del menor, y no tener la capacidad para tener una custodia compartida del menor.

Es meritorio señalar que, tomando en consideración el *Informe Social* y la *Sentencia* apelada, concurrimos con el dictamen del foro primario. Ello, puesto que son congruentes con los criterios estatutarios y la normativa expuesta en *Muñoz Sánchez v. Báez De Jesús, supra,* pág. 651. Al respecto, al momento de la presentación del recurso, no le asiste la razón al apelante puesto que, en armonía

con la normativa aplicable, este no ostenta los medios, capacidad y entendimiento que conlleva atender un menor. Ciertamente, la señora Torres Morales es la progenitora que cumple con todas las necesidades del menor. Ello, puesto que es quien se encarga de atender las necesidades físicas, académicas, económicas y de salud del menor. Además, la apelada le brinda un entorno estable al menor y la atención que este requiere.

En otros términos, el apelante alegó que el TPI actuó contrario a la normativa expuesta en *Maldonado v. Srio. De Rec. Naturales*, *supra*, tras emitir una *Sentencia* sin tomar en consideración su postura con relación al *Informe Social*. Sin embargo, el TPI emitió la *Sentencia*, pasado el término de quince (15) días concedidos para presentar su postura en cuanto al referido *Informe* y no la emitió previo a que culminara el término concedido. Es decir, el apelante tuvo amplio tiempo para radicar su postura. Igualmente, cuando radicó su *Moción aclaratoria y suplementaria,* el TPI emitió una determinación en la que dejó sin efecto su *Resolución* en la que declaró No Ha Lugar la *Moción solicitando reconsideración* en aras de evaluar el reclamo del apelante con respecto a que el foro primario no le concedió la oportunidad de instar su postura en cuanto al *Informe Social*. Consecuentemente, no nos persuade las alegaciones del apelante debido a que el *foro a quo* le concedió varias oportunidades para radicar su postura en relación con el *Informe Social*. Atisbamos que, la falta de un escrito en el que el apelante exprese su parecer con respecto al *Informe Social*, no altera el dictamen apelado dado que el trabajador social empleó su pericia sobre ello, cuando evaluó a ambos progenitores. En adición, la *Sentencia* apelada cumple con la normativa vigente sobre los criterios exigidos para adjudicar la custodia del menor.

Como corolario de lo anterior, resolvemos que el foro primario cumplió con la normativa exigida cuando tiene ante sí adjudicar la

custodia de un menor. Asimismo, resolvemos que, el TPI salvaguardó el mejor interés del menor tras no conceder la custodia compartida del menor. Empero, esta Curia acogió el dictamen apelado como uno provisional puesto que el entorno del apelante pudiese cambiar y, por tanto, entendemos que no debería ser final y firme la controversia. A esos efectos, modificamos la *Sentencia* apelada para que el dictamen sea uno provisional. En esa línea, ordenamos que el TPI celebre una vista evidenciaría, dentro del término de treinta (30) días, en aras de nuevamente evaluar otro lugar para el recogido y entrega del menor en los fines de semana que pernocte con el apelante. En adición, durante la mencionada vista, el *foro a quo* deberá evaluar nuevamente si el apelante tiene la aptitud para que se le conceda la custodia compartida del menor.

## IV.

Por los fundamentos que anteceden, modificamos la *Sentencia* apelada y así modificada, se confirma.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones